IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. _____

BENJAMIN RODGERS; and those similarly situated

     Plaintiffs,

v.

UNITED STATES OF AMERICA

     Defendant.

## COLLECTIVE ACTION COMPLAINT

### INTRODUCTION

1. Plaintiff Benjamin Rodgers brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., because the United States required him and thousands of other TSA officers to keep us safe during the 2025 federal government shutdown and paid them nothing for over a month.

2. Under federal minimum wage law, employers that fail to timely pay minimum wages on regular paydays not only owe unpaid minimum wages but also "liquidated damages" equal to the total unpaid minimum wages. One key purpose of "liquidated damages" is to compensate workers for the harm of working without timely lawful pay—the bills that go unpaid, the anxiety of not knowing whether you are going to be able to pay rent or put food on the table.

3. In many cases involving government employees who work without pay during a shutdown, courts have determined that the federal agency employer escapes this liability because it is legally constrained from paying its employees.

4. But in the 2025 shutdown, the Department of Homeland Security ("DHS") was not legally constrained. Instead, DHS made a choice: It decided to pay some of its employees and not others. Specifically, it decided to pay officers working for Immigration and Customs Enforcement ("ICE"), among others, while refusing to pay TSA agents screening passengers at our ports.

5. ICE officers implementing President Trump's immigration enforcement agenda did not have to forgo paying bills because they were working without pay. They did not have to fear that they would not be able to make rent or put food on the table. But the TSA agents protecting our ports did have to live with those fears. That is what this case is about.

6. Because DHS made a choice to not pay TSA agents during the shutdown, Plaintiff and the class he seeks to represent, are entitled to liquidated damages.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1346(a)(2), because each claim of each individual plaintiff seeks monetary damages not exceeding $10,000 and is founded on federal statute — the FLSA.

8. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this District under 28 U.S.C. § 1391, because Plaintiff worked at Denver International Airport ("DIA") in Colorado and a substantial part of the events occurred in this District.

## PARTIES

10. Plaintiff Benjamin Rodgers is a resident of Colorado. During the shutdown, he worked full-time as a Transportation Security Officer at DIA.

11. Plaintiff signed the Fair Labor Standards Act Consent form attached as Exhibit A.

12. Defendant is the United States of America, the employer of TSA personnel for purposes of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

13. Plaintiff brings this action as a collective action under 29 U.S.C. § 216(b), on behalf of:

> ALL TSA EMPLOYEES WHO PERFORMED WORK DURING THE 2025 FEDERAL GOVERNMENT SHUTDOWN AND RECEIVED $0 WAGES ON ANY REGULAR PAYDAY FOR WORK PERFORMED DURING THE SHUTDOWN.

14. Plaintiff and the collective members are "similarly situated" within the meaning of 29 U.S.C. § 216(b) because:

   a. They were all employed by the TSA;

   b. They were all required to work during the shutdown;

   c. They all received $0 on paydays during the shutdown period; and

   d. They all were paid only after the shutdown ended.

15. The legal question is common: Does paying $0 on a regular payday to an employee who worked full time violate the FLSA minimum wage requirement and entitle the employee to liquidated damages?

16. Plaintiff consents to participate in this action and attaches a written consent to sue pursuant to § 216(b) as Exhibit A.

## FACTUAL ALLEGATIONS

17. Plaintiff regularly worked approximately 40 hours per week.

18. During the shutdown, Plaintiff and other TSA employees were designated as "essential," required to report to duty, and barred from refusing work.

19. Plaintiff and other TSA officers performed full-time duties during multiple pay periods in which they received $0 on regularly scheduled paydays.

20. Plaintiff is paid biweekly.

21. Plaintiff received a partial paycheck on October 10, 2025.

22. Despite working the entire period, Plaintiff was not paid again until November 19, 2025.

23. The FLSA requires the minimum wage to be paid on the regular payday for the pay period.

24. The violation occurred on each payday where the government issued no wage payment to Plaintiff and the collective members, which includes Plaintiff's biweekly paydays between October 10, 2025 and November 19, 2025 where Plaintiff was working his normal 40 hour a week schedule and receiving no pay on his regular pay days.

25. Defendant knowingly required TSA personnel to work without pay while contemporaneously finding funding mechanisms to pay ICE personnel and other DHS components.

26. Defendant's nonpayment was not compelled by law but was a funding-allocation decision.

27. During the shutdown, the White House directed the Department of Homeland Security to continue timely payment to certain DHS employees, notwithstanding the lapse in annual appropriations.

28. In response, DHS allocated available funding to ensure full and timely salary payments to selected DHS components throughout the shutdown period.

29.     Those shutdown payments included compensation covering the same pay periods in which TSA officers received $0 on their regularly scheduled paydays, demonstrating that DHS continued payroll operations for certain employees during the shutdown.

30.     DHS publicly identified approximately 70,000 other employees—including some personnel within the Transportation Security Administration—as being paid in full for all hours worked during the shutdown, while TSA screening officers received no pay on their regular paydays.

31.     DHS justified these shutdown-period payments based on policy preference for certain enforcement functions and not on any legal requirement barring timely payment to TSA screening officers, thereby confirming that DHS possessed discretion to issue timely pay and chose not to exercise that discretion for TSA officers.

32.     Defendant knew or should have known that this constituted a violation of the FLSA and acted without good-faith justification.

33.     Plaintiff and the similarly situated TSA employees were engaged in commerce and in the production of goods for commerce, as defined by the FLSA, 29 U.S.C. § 203(b), because their job duties were integral to the interstate aviation system used to move passengers, baggage, cargo, and commercial goods across state and national boundaries.

34.     Plaintiff's job duties included the screening, inspection, handling, examination, and processing of passenger property, checked baggage, carry-on bags, cargo, identification documents, boarding passes, equipment, and materials that had moved in interstate and/or foreign commerce, or were intended to move in interstate and/or foreign commerce.

35. Plaintiff routinely interacted with and processed passengers who were traveling to or from destinations outside the State of Colorado, including both interstate and international locations.

36. Denver International Airport is a major interstate transportation hub and an instrumentality of interstate commerce. Plaintiff's and the collective members' work at DIA was conducted at a facility used for interstate and foreign transportation of persons and goods.

37. The movement of persons and property by air constitutes interstate commerce, and Plaintiff's work facilitating that movement — including ensuring security and clearance necessary for air travel — constitutes engagement in interstate commerce within the meaning of the FLSA.

38. Alternatively, Defendant constitutes an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s), because TSA is a unified governmental operational entity conducting activities that materially affect interstate commerce through the management, control, and regulation of commercial air travel.

39. Plaintiff's duties materially affected the movement of persons and property in interstate commerce because the screening functions performed by TSA officers are required for airlines to lawfully and safely transport passengers and cargo across state and national borders.

## CLAIM FOR RELIEF

**(Violation of FLSA — Failure to Timely Pay Minimum Wages, 29 U.S.C. § 206)**

40. Plaintiff incorporates all preceding paragraphs.

41. Defendant employed Plaintiff and all similarly situated TSA workers under the FLSA.

42. Defendant failed to pay Plaintiff and collective members any wages on multiple regular paydays during the shutdown.

43. This resulted in a minimum wage violation for each paycheck.

44. Defendant's conduct was willful and/or in reckless disregard of clearly established FLSA requirements.

45. Under 29 U.S.C. § 216(b), Plaintiff and collective members are entitled to recover an additional and equal amount as liquidated damages.

46. Plaintiff and collective members seek liquidated damages equal to the minimum wages due for each missed payday.

47. No individual Plaintiff's claim, inclusive of all jurisdictionally relevant amounts including attorney's fees, exceeds $10,000.

48. Plaintiff also seeks attorney's fees and costs as permitted by the FLSA and by law governing Little Tucker Act claims.

## JURY DEMAND

49. Plaintiff demands a jury trial on all causes of action so triable.

## PRAYER FOR RELIEF

50. WHEREFORE, Plaintiff, individually and for all others similarly situated, respectfully requests that this Court:

    A. Certify this case as a collective action under 29 U.S.C. § 216(b);

    B. Authorize notice to similarly situated TSA employees;

    C. Award liquidated damages equal to unpaid minimum wages on every $0 payday during the shutdown;

D. Award attorney's fees and costs;

E. Award any applicable interest; and

F. Grant all further relief the Court deems just and proper.

Respectfully Submitted,

*s/David H. Seligman*

*s/Alexander Hood*
David H. Seligman
Alexander Hood
Victoria E. Guzman
Towards Justice
PO Box 371680, PMB 44465
Denver, CO 80237-5680
720-239-2606
David@towardsjustice.org
alex@towardsjustice.org
victoria@towardsjustice.org
Attorneys for the Plaintiff

8

# EXHIBIT A

## CONSENT TO JOIN

      1.     I hereby consent, agree, and opt-in to become a Plaintiff in *Rodgers v. United States of America,* filed in the United States District Court for the District of Colorado and brought under the Fair Labor Standards Act to recover liquidated damages and any other legal redress for my time working for the United States of America in the Transportation Security Administration. I understand that there may be other persons or entities discovered in the litigation that are also liable for my claim and I authorize my claim to be brought against those other persons or entities too.

      2.     I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.

      3.     I hereby designate Towards Justice (the "Attorney") to represent me in this action.

**DATE:** 12/10/2025

**SIGNATURE:** *[DocuSigned by: Ben Rodgers]*

**PRINTED LEGAL NAME:** Benjamin Rodgers